Good morning. My name is Teresa Huggins. I'm appearing on behalf of appellant Tony Bobulinski. And I was hoping to take ten minutes for the argument, five minutes for rebuttal, and there's another appeal, a cross-appeal in this case, that I'd like five minutes for. So I wanted to start out by addressing the requests for judicial notice that were submitted in this case and the information that came in after the record. This case arises from a proceeding in the Cayman Islands. What is the status of that proceeding at this point? Because there was supposed to be a ruling not long ago on whether or not the case was going to be reopened. What's the status? It is being reopened. My client's request for appeal was granted. He now has a pending appeal in the Cayman Islands which is scheduled to be heard in December. We submitted, as this court knows, two requests for judicial notice. The first was on March 28th which had an order saying that the court would hear the request for appeal and also had his application on which his appeal was based. That application included evidence, a series of assignments my client received in an entirely separate case against CBG's opposing party here to transfer the assets that secured my client's loan out of CBG. Your briefing covers this really well and we've read the briefing. I think there's two different requests. You actually filed one of them twice. I'm not sure why. But it appears on the docket twice. There's three on the docket, I promise. I looked this morning. The most recent one is a little bit cryptic. Can you back up? Does it say it will definitely be heard in December? Yes. It requires a deposit of some sort? Sure. So last week we filed a second. There should only be two. I haven't checked the docket but there should only be two. Just trust me. The first was filed twice for some reason. I don't think it's two different animals. But anyway. So last week we filed a second request for judicial notice which has a June 1st certificate of order from the Cayman court which states that our client's request for appeal was granted. We also submitted an affidavit from Hugh Dixon of the Jowls, the joint official liquidators of CBG. In that affidavit he states that the appeal will move forward December 5th through 6th, 2022. What's that mean, we'll move forward? So the reason we did it this way is because unfortunately the Cayman court didn't have an order that had that date in it. It was through email correspondence which we thought was not with the court, which we thought was not judicially... Counsel, can you just tell me what you're talking about? Do you have a date? Yes. What's we'll move forward mean? A court in email correspondence said that the appeal will move forward December 5th through 6th. We did not feel that that was judicially noticeable. Counsel, do you know what it means to have something move forward December 5th through 6th? It will be heard. There will be a hearing December 5th through 6th. And that is what Mr. Dixon's outstanding in this case? Yes, we filed two motions for stay before the request for appeal was granted. And I'd like to again... I think those were both denied, weren't they, by the court commissioners? They were, but that was... Judge Rollinson was asking is there a request for stay outstanding now. You made another one in response to this most recent request for judicial notice? We want to make one under... So the uniform... That answers my question. But I'm curious as to what you think, even if we take judicial notice of these pending proceedings, how does that affect the enforcement of the foreign judgment that is being... Before the court at this point? Well, it does in a couple ways. So this case is brought under the Uniform Foreign Country Money Judgments Act. Section 1720 of that act, which was not at issue when we filed our briefing. And just to address your question about the motion to stay, we didn't file another one because this court had said don't file another one. So we didn't. But I want to state now that that act under which the jewels seek and recognition enforcement says in Section 720, quote, if a party establishes that an appeal from a foreign country judgment is pending or will be taken in the foreign country, the court may stay any proceedings with regard to the foreign country judgment until the appeal is concluded, the time for appeal expires, or the opponent has had sufficient time to prosecute the appeal and failed to do so. Right. Counsel, but what you're skipping, right, is where we came in at ER3, your client stipulated that the Cayman Court's cost certificates are final and enforceable. And I think all the briefing here goes to whether or not you can show one of the what I'll call defenses under the California's Enforcement Act, right? So are you asking to revisit that stipulation? I appreciate you didn't have this Roseman discovery, but you have got this stipulation in the record. What do we do with that? Well, yesterday we got another order from the Cayman Court that I would like the court to take judicial notice of. But that doesn't take away the stipulation, does it? Well, I think it does because this order that we received yesterday at 4 p.m., which we thought was too late to file in advance of today's hearing, but which I've emailed to opposing counsel, states that when the court considers the Cayman judgment appeal in December, it will also not believe that they are final and conclusive any longer. But you stipulated that they are. That was before we had received this order. Yes, and you've got a stipulation here and all the briefing is premised upon that. So what are you asking? I'm asking the court to take judicial notice of the Cayman orders that have occurred since we submitted our briefing. There's a live, active appeal going on in the Cayman Islands. Maybe I didn't ask a good question. I'm sure I didn't ask a good question. Vis-a-vis your stipulation in this case, that that's a final and appealable order, that they're final and enforceable, I should say. What are you asking? Well, we're asking for two forms of relief. The first is what we ask for in our briefing, that this court remand the case to the district court and reopen discovery. When the district court made its decision granting summary judgment and upholding these cost orders, it did not have a full factual record before it. It did not have evidence of the assignments, the assets were transferred out. It did not have any of that. And my client was denied discovery and did not have an opportunity to meet his burden of showing non-recognition under the Uniform Act. In the alternative, we ask that the court stay its decision here pending, under Section 1720 of the Act, pending decision in the Cayman Islands. What exactly, what was the additional information that Mr. Bobulinski sought in the additional discovery? He, in this case... Does it just relate to the subsequently discovered evidence, or what is the exact facts that he sought to obtain through discovery? In the district court, I'm sorry. Well, he submitted, so one of the errors in the district court is that he submitted no affidavit. That is incorrect. He did submit an affidavit. It's at 2R-ER-202. In that affidavit... Under Rule 56D, he submitted the affidavit, right? Correct, he did submit one. And the order is incorrect in saying he did not. And in that affidavit, he says specifically he needed discovery on two specific issues. One, the nature of the initiation of the Cayman liquidation that forced Bobulinski to litigate in the Cayman courts. Okay, but that's quite different than what you're now advancing. What you're now advancing is that in the separate Roseman litigation that your client claims to have discovery to show that assets were transferred, right, just before the liquidation was initiated. And that's the basis of your, I'll say, extrinsic fraud claim. Two points on that. First, the way we got the assignments in the Rosen matter was asking... So when Roseman and my client met, my client was assured that his loan to CBG would be secured and would be secured with the assets of the company. We know, we know. Right. So the reason he pursued Roseman, the reason he's pursued this case so vigorously is that he was told that certain license agreements existed in the US that secured his loan. When he got to the Cayman Islands, he was told CBG had no assets. The company was bare. It was a holding company. This was patently different than what he'd been told in his conversations with Roseman. So in the Roseman litigation, he asked for all documents related to security of his loan, all documents that, you know, related to the assets that secured his loan. That's how we got the assignments. He would have asked for the same thing here. The second point is that in terms of specifically telling the district court that we needed assignments showing the assets were transferred out of the company, he couldn't ask for that because he didn't know. CBG knew. The Joles knew. Everybody knew but my client. He was in the dark. So he didn't know what he didn't know. He knew something was wrong. He knew this litigation, this liquidation smelled bad. He knew that what he was promised hadn't happened, but he didn't know that specific fact. I just want to point out one last thing. There is no prejudice to the Joles if by remanding this case or staying in this court's decision. Why wouldn't there be prejudice? There's already a final judgment that's in the process of being enforced. It is not in the process of being enforced. That's why we're here. Right. In the Cayman Islands, it is not. So why isn't it in the process of being enforced if we are here on an appeal of an action to enforce that judgment? Well, all the parties that are here are also in the Cayman Islands. The CBG and the Joles are in the Cayman Islands. Mr. Bobulinski is in the Cayman Islands. But you know that our job is to get litigation done, right? And hence, my focus on this stipulation because if the jumping off part is the stipulation, that presupposes that there's a final enforceable judgment. And if that's truly being re-looked at, that's a final enforceable judgment as to the resulting attorney's fees. So your representation is that this most, and I'm not doubting you, I just haven't, I'm trying to find it, it's not exactly as I recall, that the most recent stipulation indicates that they're going to, I guess it's 4 o'clock last night that you filed it or received it. We didn't, I have it right here. We've not filed it. Ah, no wonder I can't find it. Okay, so your representation is that the cost certificates, the fee awards will also be reconsidered. We do not have that and we don't have a pending motion for a stay. And we don't have any briefing on what we would do on one way or another about this stipulation. Um, I mean, I'm making an oral request for judicial notice. We can also file it. We received it too late to file in advance. If you want us to notice it, you certainly will need to file it. Okay, we can file it. It's on paragraph 1E of this request. Just before you leave the podium, can you, I don't know if you're leaving or not, but opposing counsel has that too, I hope? He has it and I can give it to him again right now, but I've emailed it to him. Um, who has this order? And we can file it today. But in this order, the court clearly says that the cost orders will be revisited. There's no, to address the prejudice issue, there's no prejudice because, um, CBG, there is a bond in place in this appeal. There is also discussions about a bond that federals are asking Mr. Boblinski to post an additional security down in the Cayman Islands. So there is no question that they're going to get their, you know, they'll get paid should they prevail on appeal. Could I get you to, forgive me for interrupting, but could I get you to focus on, if we, if you don't prevail on that, this stipulation is binding, then you've, the premise of your briefing is that you've, you've alleged quite a number of challenges to the judgment and, you know, the extrinsic fraud argument, the Republic to, repugnancy to public policy, those, those arguments. Which of those do you think are your strongest? Extrinsic fraud. Okay. What do you do about the comment to the Uniform Law Commission? Um, that is, I understand the answer to your question, the answer to Judge Kristen's question, is that based upon the allegation of joint official, um, concealment? Is that JOL concealment? That's right. They did not present evidence of the transfers to the Cayman court. Instead, they went into court, told the court that CBG had no assets. Right. So the problem you've got is extrinsic fraud is this very high bar, right? And so I'm looking at the comments here, um, to the law that was a model for California's law, and it, it, it describes scenarios that may, or that have been found to constitute extrinsic fraud, and they seem to be quite different from the circumstances here. Um, do you have a particular case where you think it's different? Well, I'm just looking at the commentary to the, to the model provision. And one example is, of extrinsic fraud is plaintiff deliberately had, um, initiated a, had, had, had the initiating process, served on defendant at the wrong address, deliberately gave defendant the wrong information regarding time and place of the hearing, or obtained default judgment based on a forged confession, confession of judgment. So I think that sort of, to me, anim, animates the quote that we see in the case law where, um, extrinsic fraud is defined as the inability of the opposing party to present his or her case at all. What we have, of course, is a five-day hearing, I think, in almost a 98-page order. Well, I think there's significant case law, which we cited in our brief, um, the default, default case, the Pence case, where an opposing party concealed particular evidence that the court found dispositive to the case. And in those cases, the court did find extrinsic fraud. One of those cases is being reconsidered. Which is your strongest authority? I don't want to take a whole lot of time on this, but what's your strongest authority for, um, I think Pence or Caldwell. Okay. Both of those. But, um, I'd just like to point out the prejudice to my client if this court recognizes and enforces the judgment. Um, one, we're concerned about dissipation of assets. CBG has complained repeatedly about the cost of this litigation, the costs are far more extravagant to my client, an individual versus a company. But in any event, we have no guarantee that the judge simply wouldn't spend the money, and if he prevails in appeal, he won't be able to execute on the, on the judgment. Um, there's concerns about duplicative recovery. We don't have any guarantee that the Cayman Court won't also find that. Well, you don't have any guarantee that, that the Cayman Court will find in your favor, so. Correct. That's, that's, that's the chances you take in litigation. That's not prejudice. Having to litigate a matter is not prejudice. It's, it's a risk of it. And, um, the other issue is additional litigation. If this court recognizes and enforces the judgment and my client does prevail in the Cayman Islands, he would be forced to unwind this, the U.S. order and recover the bond. If the court simply stays its decision for six months while the Cayman appeal works out, um, that risk would be gone. There is one case which was not relevant when we filed our brief. I hope the court will consider it. I've given it to opposing counsel. It's Fleischer Studios versus Avala. Um, it's, I have copies here. It's 2015 WL12748, 43879. It's a case exactly on point. It's a, it was a U.K. judgment where a plaintiff tried to, uh, enforce and recognize cost orders in the United States. Meanwhile, the defendant filed an appeal of the underlying judgment in the U.K. The U.S. court stayed the cost order decision based on the section 1720 of the Uniform Act, which I just cited. And the reason it did was based on, um, considered three factors. One was convenience to the parties. Let me just pull up my notes so I get it right. Halsey, you're using all your time just so you know. Okay. Um, one was convenience to the parties. Two was the, um, interest of the forum. And, um, three was the, uh, so in any event, the court found that convenience to the, the parties, that there was very little inconvenience in having the plaintiff wait 11 months in that case versus six months in that one, that the U.K. court had the far greater interest in deciding the merits of the matter versus the U.S. court, which had only an interest in enforcing whatever the U.K. court decided. All right. Thank you, Counselor. You have three minutes and 19 seconds left. Okay. I'll take it on rebuttal then. All right. Thank you. Thank you. Hi. Good morning, Your Honors. Did you say hi? Uh, excuse, uh, I should have said good morning. Thank you. I confused those two words. Excuse me. Uh, good morning, Your Honors. I'm Robert Cohen. I'm for the JOLs of the China branding, uh, side. I'm the, uh, I'm the appellee with respect to the, the, you know what I am. And you also have the, now Counsel, you are very informal. I'm sorry. I don't mean to. We don't know what you mean. Please address the court appropriately. I just, I apologize for that. What I meant to say was I was confused and I am the appellate with respect to the substance of the case. I'm the appellate with respect to the attorney's visa issue. I'm the appellee with respect to the substance of the case on enforcing the foreign judgment. Slow down and take your time. That's okay. Thank you. I apologize. That's, it's my not taking my time that led to that kind of problem. All right. So before you begin, I wanted to ask you, what's your position on whether or not this action should be stayed pending completion of the apparent reopening of the case in the Cayman Islands. Do you agree that the court has, um, calendared this matter that the Cayman court has calendared this matter? I do not. I received, there's the short answer is no. Even the long answer is no. Uh, what I received last night, whatever time it was, was an order. There is an existing order and it was in fact filed yesterday in the Cayman Islands and it grants this conditional appeal, uh, out of time. Uh, and I, I guess it will be, it is not submitted to your honors, but I guess it will be today. I, I believe I have a copy in my hand. What do you mean by conditional? What I mean is why I call it conditional. Uh, here's what it says. Okay. Uh, it's like three pages long. And number one, subject to paragraph six, the applicant, Mr. Boblewski is granted leave to appeal out of time in respect of the following issues. Then it identifies those issues. Subject, but the key part from my point of view is paragraph six, which it is subject to, which is why I call it conditional. And that it says this, unless by 4 p.m. on July 18th, 2022, the applicant satisfies the sum of, it's a sum of money, $634,393.52. Uh, and then it, I don't want to go into too much detail, but the conditions are that Mr. Boblewski pay the amount at issue in the case. In the form of a bond or in the form of cash? In the form of cash. Plus, and as yet unidentified amount in terms of security for the other side's attorney's fees. And I think that was covered in an earlier order because I had seen that much. So, will we know whether those financial conditions are going to be met by July 18th? Fair question. I don't know. I guess I don't know. I don't want to avoid your question. Is that what the order requires? The order requires that by July 18th, those conditions be met. So in that sense, yes, I suppose you will. Now that I'm, yeah. All right. All right. I mean, if we're informed, I guess that's what I should say. Counsel, what's your position on whether we should stay this matter pending any proceedings in the Cayman Islands? I am against it for many of the reasons your honors seem to be driving at in the previous discussion. I am against it because there is no, there's been, there's been, I think there are three on the record in this case, motions to stay on similar grounds. No, they weren't on similar grounds. This is quite different. This is quite different. And whatever it is that, you know, the Cayman Islands court entered a very thorough order. And whatever it is that opposing counsel has at least to the point where they want to take another look, why wouldn't we let them do that and wait? I'm hesitating because I want to give you an honest answer. I don't want to just give a flip of, whoa, who cares? I mean, you're right. As opposed to the other answer? As opposed to the other, there's a, there's a sort of inclination. Well, that doesn't matter. Because you have a hundred percent right. Well, I haven't seen, okay. Because we've spent so much time litigating on the basis of the things that we believe to have been the case on the basis of the stipulation. There, there's nothing that would, even if they were right in the, even if that's, even if something happens in the Cayman Islands that changes the relevant status quo. Number one, I've seen no reason to expect that will happen. But again, I don't know, but maybe something could happen. But that would in no wise, in no way say anything about the existing stipulation that governs this case. We don't know that. We don't know that. Because if the judgment goes away, the basis for the stipulation goes away. I mean, it really is the whole deal. We're talking about an action to enforce a foreign judgment. You're right. That's why I'm looking for a basis to say, no, that's not true because we stipulate. But I mean, I can't, to be honest, you're, you're right. If that judgment went away, then just by elementary logic, then the reason I'm suing also goes away. I can't deny that. I don't know as a matter of law what that does, nor can, that stipulation doesn't go away though either. And the function of an appellate court for, I'm stating the obvious. Well, the stipulation does necessarily go away because the stipulation is that there is a final and binding judgment. And if the Cayman court takes that away and says there, there is no longer a judgment, that stipulation is, is, is null. Fair enough. I can't, I, all I can, here's what I can say though that I think is a relevant thing to say without, you know, escaping from the question and giving an honest answer. We assume that all your answers are honest. Yeah, fair enough, fair enough. You don't have to reassure us. Okay, fair, fair enough. But the, I will say this. The case law that I cite in my briefs explains that for purposes of this statute that I'm suing under, the existence of an appeal is simply not a relevant factor in whether or not it is enforceable. The, the stat, the, the California Supreme Court in the Monk, Manco case, I believe it's called, and it's explained in some length, I guess, it's explained at some length in my brief, why the relevant question is, is there a, a final and existing order? And the answer right now unequivocally is yes. There is a, there is a, there is a conditional appeal that might happen, but that's not the relevant question under the statute that I'm suing under. Counselor, let me ask you, what happens if we enforce this judgment and then the Cayman Islands reverses itself? I don't know, and I don't mean that in a, okay, I, okay, in that case. I don't think I want to find out. That's my problem. Right. It seems like unwinding it would be horrendous. I, I don't know that we do need to wait for the entire litigation. I'm wondering about the requirement, which is no small thing, on July 18th, apparently, I haven't seen this filing, that the, that the surety be posted. Or cashed, be posted. There, there may be an interim, you know, step that we can take, but it, it does seem to me to be, you've got a pretty tough hill to climb. I can't deny that that's a fair point. What I'm really afraid of, and you can probably, just the wheels behind the wheels, is, is waiting a long time, because the way this built up on the previous request for a stay, there was a promise that the appeal will be heard on May 22nd, it will be heard on that day, and we'll know that day. Well, May 22nd came to pass, and that didn't happen, and now, although I can't argue with it, it's further in the future, but admittedly, it's not that far in the future, it's July 18th. So, I mean, I, I have to agree, though I'm loath to, I have to agree that waiting until July 18th is not, it's not the end of planet Earth, it's not, it's, I get it, it's, it's not severe prejudice. What about, how long, if, if, if the appeal were taken by the Cayman Island Court, how long do you think that would take? I really don't have a good feel for that. I don't know. I don't know how it works there. I don't know the answer to that. I wish I could give you a better answer. That's fair. Yeah. But suffice it to say that it would require the posting of $634,393.52 in cash. That, that is correct, and I have no good faith, I have no reason to believe that's going to come to pass. So your client would, your client would be secured in that case, correct? Yeah. Money's not going anywhere, it's sitting there waiting for the resolution of the Cayman. I can't deny that. I don't deny that. Okay. I just, I guess to the other side of that same coin is, I have no realistic expectation that those conditions will be met. And we'll know that in a month. We'll know that in a month, and then we can proceed with our ruling if that doesn't happen. I can't honestly argue against that. I mean, I just have to, again, I'm loaded to say no, I don't want to agree with that, but I just... We appreciate your candor. Yeah. So on the merits. Okay. Let's proceed. What's your argument on the merits? On the merits, well, okay. Where... Is the judgment enforceable under the statute? Clearly, yes. Under the statute, there's a presumption, whereas here, there is... The plaintiff's side's burden is to establish the fact of the foreign judgment that it is for a sum of money. That it's non-tax or non-family matter type judgment. A foreign money judgment. We have clearly established that fact. Therefore, there is a presumption of its enforceability under the Uniform Act. There are, as both sides concede and explain in their respective briefs, there are means to challenge that. If the other side shows, if the party resisting enforcement shows certain grounds for non-recognition... She says her strongest argument is extrinsic fraud. Right. Okay. So dealing with her strongest argument, extrinsic fraud, as Your Honor indicated in the colloquy earlier, and as my brief likewise indicates, the standard for extrinsic fraud means something you couldn't have taken care of while you were at the trial. Right. And her response is she couldn't take care of it because her client didn't know anything about it and only got the Rosman discovery more recently. Let me ask you this. Is the Rosman discovery about the transfer of assets what was filed to seek the conditional appeal in the Cayman Islands? I don't know what led, I don't know what factors, I'm not privy to what factors led to the granting... I ask you a different question, counsel. Oh, maybe I misheard. Do you know whether that's what the basis of the filing was? Not the court's order, but their filing? I've never seen those filings. Reading between the lines, I guess it related to that, but I don't know. Okay. I don't know. You've answered my question. So, counsel, do you think that Mr. Bobineski asserted extrinsic fraud or intrinsic fraud? Very, very clearly it was intrinsic fraud, which could have been dealt with there. There's been descriptions of what that fraud was. I don't even understand what it was. There's this sort of vague, like, I honestly don't follow what the fraud allegation was. I guess it goes to something... The fraud allegation, from my understanding, is that Mr. Bobineski was misled as to what assets were available to secure the loan. And that China Branding did have assets and transferred them away, transferred them out very shortly before the filing in the liquidation proceeding. But those were the sort... It's a 93 or 98 page... Well, but now do you understand what the allegations are? I'm sorry, we said... Now do you understand what the allegations are? I do, but I don't understand why those are something that constitute... That was a different question. I asked you what the allegations were. To that extent, yes. To that extent, I do. But I guess I was... Maybe I was unclear. I didn't understand what significance that alleged fraud had to do with the legitimacy or the rightness or wrongness... That's the question. She alleges it's extrinsic fraud. Right. That's what it has to do with. She alleges it's extrinsic fraud. The cases say that even perjury or lying under oath is the kind of thing... That doesn't constitute extrinsic fraud. I think your response is that it's only intrinsic. Getting back to Judge Robinson's question, if we understand you correctly... That is exactly right. That is exactly right. Okay. Could you move to the attorney's fees appeal? Yes. The cross appeal? Cross appeal. Okay. I just wanted to follow. Thank you. Okay. On the attorney's fee appeal, the motion was made under... The motion, the post-judgment attorney's fee motion was made under California Code of Civil Procedure Section 685.040. I hope I got that right. Yes. Which entitles the prevailing party in enforcing a previous judgment to fees, to attorney's fees, where, as here, the underlying judgment had both two conditions. One, it contained an attorney's fee provision, which is undeniable here. That's what I'm suing about. And two, the attorney's fee award in the underlying judgment was made pursuant to either contract, which is not here, or statute, which was here. What statute were the fees awarded pursuant to? What statute? It wasn't the California statute. No, it was not. It couldn't be the California statute. So what statute were the fees awarded pursuant to? I can't quote a chapter and verse, but it's the Cayman Islands statute that I cite in my reply brief. Wasn't it the English rule? That's the law part. It was the English law. Is that codified in the Cayman Islands? Yes, it is. I cite it in my reply brief. But the California state law clearly states that statutes does not cover the laws of a foreign country. It refers to statutes, correct? Under the section, if I'm not mistaken, 685.040 of the California Civil Procedure Code, it specifically notes that the fee under the other section, 1033.5, must be in terms of statute, contract, or law. Correct. And it was clearly not included due to a contract. Correct. And your client is arguing that it's entitled to a fee award under Cayman law. And I thought there's clear state law, California state law, that says that the reference to statutes does not include the laws of a foreign country. So I'm asking if you would respond to that. Yeah, but I don't – I sort of – Counsel, please don't say yeah. That is really annoying to me. Your informality is very distracting. So would you please – I will. Yeah, I'm trying. I did not do that. My question to you is, as I understand California state law, the reference to statute, there's a case law, the Rosen case, I believe. It's in the brief somewhere. It's the Court of Appeals of the State of Florida, State of California, 2014, is that the 685.040 to which you refer refers to statutes, not the laws of a foreign country. So if there's no applicability of contract, you can't rely upon statute because you're basically basing it upon Cayman Island law apparently. Is that right? If I'm mistaken, correct me. I think you are mistaken. Okay. I don't – I want to answer you directly, but I don't follow the distinction you're making. My point is that, as I understand it, your argument on behalf of China Branding Group with respect to its fee award is under Cayman law. That's your basis of your request for the fee award. Well, yes, but in the following important sense. It – I mean, my side is entitled to its fees if two conditions are met. One, the underlying judgment must include an attorney fee award. That is met. Two, that underlying attorney fee award must have been pursuant to one of three avenues by which it arose, either statute, contract, or law. Law. That's right. That is correct. Okay. And the district court – okay. It says otherwise provided by law. Otherwise provided by law. And that's your proceeding pursuant to. Your position is that Cayman law otherwise provides for it. That is exactly right. And I apologize if my question was – We just don't have any California law really going to this exactly. I mean, I don't think there's any case law that really goes to it. There's a case law that allows recovery of fees for enforcing a judgment where other sources allow recovery. Yeah. So you have to do a little duct tape here. I mean, you'd have to sort of glue a few things together. Well, respectfully, I think that what I need – you're right. I do not have a California case applying in the sense of a foreign judgment. Right. And I may have misinterpreted that case. I'm just saying that I thought I understood that it clearly refers to statutes but not the laws of a foreign country, and I could have misinterpreted the case or not. It just says law. Okay. My point is that law – I don't think you misinterpreted it. I thought that was my interpretation. It clearly precludes – if I'm wrong, I thought it precludes that. Well, thank you, Judge Rawlinson. I'm glad you affirmed me on that. Not often a district court judge can have a certificate that's affirmed. We'll discuss in conference. I'm on the spot, you know. Note to panel. We will discuss in conference. But do you have more that you want? Your time is just about up. I just – maybe I just finished that point. I have a question, actually, on that. Okay. Go ahead. If you win on that point, is it your position – forgive me for pointing at you. Okay. If you win on that point, is it your position that your client should recover all of its fees for all three summary judgment motions, including the ones that were withdrawn and didn't conform with the local rules? My position is that if I win on that motion, it gets remanded for consideration of those issues. Okay. Fair enough. Yeah. And just – if I can just clarify what I believe is important about that law point. All it says is you get your fees if they're provided for by law. I explain it – 685.040 is the section. Correct. In that statute. Right. And I believe it is undeniable, although admittedly, I don't have a California case that – in the context of a foreign judgment. But I do – and I believe it is relevantly analogous. I do have California cases in the context of sister state judgments or federal judgments because it's – these are the California laws. They're the same. They're both foreign to California law. The same principle applies as a matter of logic. Well, counsel, if you don't have a case to support your argument, don't you lose? I don't think so because I have a statute that says that I get my fee – my side gets  And it's been applied – it's been applied just not in a foreign country context. It's been applied to foreign states and foreign jurisdictions. I think we understand your argument. Okay. Okay. Thank you very much. Thanks very much. Okay. Rebuttal? Just a few points. The Cayman order being conditional on the bond, that's the duplicative recovery issue I was discussing. My client doesn't want to have to – they want – CBG wants him to post a bond in the Cayman Islands regarding that appeal. He doesn't want to have to post a bond. That's beyond our control. Okay. Whatever you have to do to get your appeal in the Cayman Islands – He'll do it. That's not our – that's not our – I just want to emphasize he'll do it. He'll comply with the Cayman court. We'll see. He'll transfer the bond. We'll see. We know for sure. Right. So you don't have to assure us that he will do it. If it's done, it's done. Okay. And if it isn't, it isn't. Fair enough. Regarding the appeal not being heard May – that had nothing to do with my client. He wanted it to be heard then. Unfortunately, we can't control the courts. And we understand. Yeah. We can't either. Okay. Regarding – Even among ourselves. Regarding there being no basis for a stay in a situation like that, that's just untrue. Again, Section 1720 of the Uniform Act under which CBG brings this case specifically allows for a stay where there is a pending appeal. The Minkow case, which is cited by CBG in its briefing, in which he just referred to, 45 Cal 4th at 202, also recognizes that the court has, quote, discretion to stay the recognition proceedings until all foreign appeals are concluded, and cites that same statute. Again, the Fleischer case that I earlier referred to also states that this court has the ability – and in that court case, the court did stay an appeal pending judgment in a foreign country. Counsel, on the attorney's fees issue – Yes. So, the statute provides that with a California case, Carnes v. Zamani, says that in the absence of express statutory authorization such as that contained in the final sentence of Code of Civil Procedure Section 685.040, post-judgment attorney's fees cannot be recovered. Right. So, why doesn't that preclude the argument that was made on behalf of China Branding? I mean, it does preclude that argument. What about the Rosen case, the McQueen case, and the Ketchum case? Let me just get my – I think those cases stem for the proposition. For me, this is a gray area. I don't think that we've got case law in point. I think Judge Alton probably agree with that. But I – well, I don't know. We'll find out. But I think that those cases stem for the proposition that 685.040 does allow recovery for fees for enforcing a foreign judgment where the other sort of law does allow it. Where another law allows it, yes. But it's not statute. It's other sources of law. And if you look at those cases, they weren't all statutory. Right. So, as we pointed out in our reply brief, they don't cite any case analogous to this. Right. We get that. We get that. We may not – we may never get this far. So, in all of these cases, it was either by contract, by there was a corporation statute. In each of those cases, there was a specific provision of law that did provide for fees. Not just the common law, English rule. Correct. There is no case law. We've been unable to find any CBG cites none in which a U.S. court granted attorneys' fees under the EHL based on a foreign law. There's just no law. And it doesn't – you know, as the district – You dispute opposing counsel's representation that the English law provision in Cayman Islands is codified? It is – I mean, it's codified, but it's also not mandatory that – Well, yes. But they were awarded pursuant to the statute. That's his point. And I understand that a California court hasn't really gone where we're being asked to go, but it is a different – his argument is different. Well, just one fine point on that. They were awarded attorneys' fees, which are the cost orders he's pursuing here. He's now seeking additional attorneys' fees on top of that. We get that. Yes, we understand that. Okay. We certainly understand that, counsel. Right. So, that has not necessarily been ordered by the Cayman court, so. But the issue was whether the underlying fees that were ordered by the Cayman court were pursuant to a statute. So, you're saying there is a statute in the Cayman Islands that supported the award of fees, and that's what the court relied on to award fees? I didn't read the record as saying that, but if you're saying that, that's fine. Well, I – no, the initial cost orders were made pursuant to the English law. I don't know that they were made – he cites a statute in a declaration. He doesn't provide the actual law. What's important is what did the Cayman court cite in terms of its award. The record didn't appear to reflect that there was a statutory citation. I don't think he cited it in his declaration. The Kendall Declaration cites a Cayman statute. I don't believe the Cayman court cited that statute. That's the one he's relying on. But, again, the district court was correct in finding that the case law requires a law that the California courts have relied on in awarding attorneys' fees, and there is no case law here allowing the Cayman court. All right. Thank you, counsel. Thank you. Thank you to both counsels. The case just argued is submitted for decision by the court. That completes our calendar for the day and for the week. We are adjourned. All rise. This court's discretion is now adjourned.
judges: RAWLINSON, CHRISTEN, Bennett